ANGELO DiPONIO EQUIPMENT COMPANY v DEPARTMENT OF
STATE HIGHWAYS

Docket No. 49971. Submitted February 10, 1981, at Detroit.—Decided
    May 26, 1981.

Angelo DiPonio Equipment Company, Greenfield Construction
    Company, Inc., and Kensington Corporation brought an action
    against the Department of State Highways and the State
    Highway Commission for damages arising out of defendants'
    rejection of plaintiffs' bid on certain highway construction
    projects. Following trial, the trial court found that no contract
    had arisen between the parties and dismissed plaintiffs' com-
    plaint, Court of Claims, Martin B. Breighner, J. Plaintiffs
    appeal. *Held:*

    The trial court properly dismissed plaintiffs' complaint. The
    record reveals that the department expressly notified plaintiffs
    of its intent not to be bound until a formal written contract
    was executed and work was authorized by the commission. The
    commission failed to execute a contract, and thus no valid,
    enforceable obligation arose.

    Affirmed.

1. APPEAL — FINDINGS OF FACT.
    A finding of fact by a trial court is held to be clearly erroneous
    where, although there is evidence to support it, a reviewing
    court, on the entire evidence, is left with the definite and firm
    conviction that a mistake has been committed.

2. CONTRACTS — NEGOTIATIONS — OFFER AND ACCEPTANCE.
    Negotiations conducted in anticipation of entering into a formal
    contract are not operative as an offer and acceptance where the
    parties involved indicate that the expected or proposed contract
    is to be the exclusive, operative consummation of the negotia-
    tions.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 839.
[2] 17 Am Jur 2d, Contracts §§ 33, 34.
[3] 64 Am Jur 2d, Public Works and Contracts § 23.

3. CONTRACTS — HIGHWAYS — EXECUTION.

> A contract does not arise where one party to a proposed agreement manifests an intent not to be bound until the execution of a written instrument, and the furnishing of contract forms to a potential construction company contractor by the Department of State Highways and Transportation accompanied by an express statement that the action does not constitute an award of a contract or official authorization to begin work on the project will not give rise to a valid, enforceable obligation.

*Schmier, Fealk & Ellis, P.C.,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *Irena Kalvans,* Assistants Attorney General, for defendants.

Before: M. J. KELLY, P.J., and V. J. BRENNAN and T. M. BURNS, JJ.

PER CURIAM. Plaintiffs appeal as of right a January 9, 1980, decision and a January 30, 1980, judgment dismissing plaintiffs' complaint for damages.

Defendants invited bids for construction projects involving the widening and paving of Newburgh Road at its intersection with other streets in the cities of Westland and Wayne in Wayne County. Since these roads do not constitute a part of the state trunkline highway system, the financing of the project was to be shared by the Federal Highway Administration, Wayne County Road Commission, and the cities of Westland and Wayne. Defendants were to act as the agent of the local governmental entities.

Bid proposals for the proposed project were opened on June 19, 1974, and on June 21, 1974, plaintiffs were determined to be the lowest bidder on the project. However, plaintiffs' bid exceeded

defendants' cost estimate by 31.7 percent. On June 25, 1974, defendants rejected all bids.

Upon receiving notice of the rejection of all bids, DiPonio contacted the Director of the Department of State Highways and Transportation and learned that the funding entities would not increase their share of the project's cost in order to provide for the excess over the cost estimate. DiPonio was advised that if the local units of government would increase their proportionate share of funding, the project could go ahead. DiPonio contacted the local units of government, who later advised defendants that they would increase their proportionate share of funding necessary to cover plaintiffs' bid.

On July 12, 1974, defendants forwarded to plaintiffs unsigned contract forms accompanied by a cover letter which indicated that execution of the contract forms by plaintiffs did not constitute an award of the contract. Thereafter, defendants contacted plaintiffs and scheduled a preconstruction meeting for July 19, 1974. The preconstruction meeting was held as scheduled, and the minutes of the meeting were forwarded to plaintiffs. The Federal Highway Administration wrote defendants on August 8, 1974, and advised them that it would be in the public interest to reject all bids and to readvertise the project. Therefore, defendants advised plaintiffs on August 16, 1974, of the decision to reject all bids and to readvertise the project. The project was rebid by defendants on July 16, 1975, and the contract was awarded to another contractor, whereupon plaintiffs filed suit for damages.

The trial court found from the evidence that defendants expressed an intent not to be bound until the contract was executed by the commission and the work was authorized. Therefore, the trial

court found that the contract had not arisen. We agree.

The thrust of plaintiffs' argument is that they were not notified that there were any contingencies prior to the awarding of the contract, that all steps necessary for commencement of construction were taken by both parties, and that therefore the bid was accepted and a contract arose between the parties. However, the central question is whether defendants expressed an intent not to be bound until execution of the written instrument.

In support of their contention, plaintiffs argue that they were never notified prior to the receipt of the contract documents on July 12, 1974, or at the preconstruction meeting on July 19, 1974, that the contract award was contingent on funding. Plaintiffs further argue that there was no reason for them to believe that all approvals had not been obtained at the time they received the contract documents for completion and return. However, plaintiffs were notified on June 25, 1974, that all bids were rejected. The bids were rejected because the lowest bid was 31.7 percent above the estimate, said rejection being pursuant to 1973 Standard Specifications for Highway Construction, § 1.03.01, which allows the commission to reject any or all proposals. After receiving the notice of rejection, DiPonio contacted the Director of State Highways and discovered that the bids were rejected because they were in excess of the estimate of the cost of the project but that if the local communities increased their proportionate share of funding the job could go ahead. Pursuant to DiPonio's efforts, the local governments increased their funding and the contract forms were mailed to the plaintiffs, accompanied by a cover letter which indicated that the supplying of the contract

and bond forms did not constitute an award of the contract and that plaintiffs were advised not to start work until officially authorized to do so.

DiPonio returned the completed contract documents to the department on July 15, 1974, whereupon a preconstruction meeting was scheduled for July 19, 1974. Plaintiffs place great reliance on the fact that it was never indicated that the contract had not been awarded or that it would be contingent on the availability of funds. However, specification 1.03.02 requires that a progress schedule be approved before award of a contract. Further, the minutes of the preconstruction meeting forwarded to plaintiffs immediately after the meeting advised them that the work was to begin within ten days after the contract had been awarded.

Thus, although there was no express representation that the contract award was contingent upon state and/or federal approval, it is apparent that the contract had not been awarded and that the defendants manifested, particularly by their letter of July 12, 1974, an intent not to be bound until the written contract was executed by the commission.

The trial court found from the evidence that defendants expressed an intent not to be bound until the contract was executed by the commission and the work was authorized. Based on an analysis of the evidence, particularly the cover letter accompanying the contract documents received by plaintiffs on July 12, 1974, this conclusion is not clearly erroneous. A finding is clearly erroneous where, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed". *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976),

GCR 1963, 517.1. Therefore, the trial court did not err when it found that defendants expressed an intent not to be bound until the contract was executed by the commission.

The trial court further found that since defendants manifested an intent not to be bound until the execution of a written or formal contract, no valid and enforceable obligation arose. We agree.

In *Michigan Broadcasting Co v Shawd,* 352 Mich 453; 90 NW2d 451 (1958), the Court held that if the parties indicated that the expected or proposed contract was to be the exclusive, operative consummation of the negotiations, the preceding communications would not be operative as an offer or acceptance. See also 17 Am Jur 2d, Contracts, § 28, p 363, 1 Williston on Contracts (3d ed), § 28, p 66, 1 Corbin on Contracts, § 30, pp 97-112.

Plaintiffs cite numerous cases for the proposition that once a low bidder has completed contract documents and performed all necessary requirements, formal execution of the contract is not required. However, those cases are clearly distinguishable.

In *McIntosh Road Materials Co v Woolworth,* 365 Pa 190; 74 A2d 384 (1950), the plaintiff submitted a bid which was in the form of a contract, fully and completely executed so as to be automatically binding upon it upon acceptance by the Secretary of Property and Supplies within 30 days from the date set for opening of all bids. The plaintiffs had complied with all requirements and were notified by telegram that awards had been made to them based on their bids. The next day, plaintiffs were sent letters stating that the contract had been awarded to them.

Thereafter, it was determined that a savings could be realized by allowing an unsuccessful bid-

der to perform the contract, whereupon the Secretary of Property and Supplies purported to recall and grant new awards. The court held the new awards void and upheld the prior awards, finding that the contract was complete when originally accepted by the Secretary of Property and Supplies, and ordered the appropriate authorities to execute the contract.

The factual situation here contrasts with that in *McIntosh* in that the department originally advised the contractor that all bids had been rejected and that the project would be readvertised. Based upon DiPonio's efforts, the local units of government agreed to increase their proportionate share of funding, and consequently the contract forms were sent to plaintiffs with a letter which cautioned that the furnishing of the contract forms did not constitute an award of the contract. Thus, it was never indicated to plaintiffs that the contracts had been awarded to them.

Plaintiffs also rely on *Williams v City of Stockton,* 195 Cal 743; 235 P 986 (1925). There, the council adopted a resolution, which was approved by the mayor, awarding a contract to plaintiff for certain public work. The mayor was directed to sign a written contract, which he failed to do prior to the expiration of his term, and a new administration attempted to revoke the award by subsequent ordinance. The court held that upon the award of the contract to plaintiff and on compliance with all requirements on his part he obtained a right to the benefits under the contract and that he could not be divested of such right by adoption of the second resolution. As noted, the contract had not been awarded to plaintiffs in the instant case. Thus, their reliance upon *Williams* is misplaced.

In *Garfielde v United States,* 93 US 242; 23 L Ed 779 (1876), the United States Supreme Court found that a contract arose without the execution of a written instrument because the statute provided that the contracts shall be awarded to the lowest bidder. Therefore, the Postmaster General had no discretion in awarding the contract. In *United States v Purcell Envelope Co,* 249 US 313; 39 S Ct 300; 63 L Ed 620 (1919), the Court relied upon *Garfielde, supra,* in holding that once the government had accepted the bid and entered the order awarding the contract to plaintiff, a formal execution was not necessary. In the instant case, there is no statute which requires that the contract be awarded to the lowest bidder. Further, the department expressly stated that the contract had not been awarded to plaintiffs when the contract forms were furnished to them for their completion. Thus, those cases are inapposite.

In the case *sub judice,* the department advised plaintiffs that the contract would not be awarded until it was executed by the commission. Since a contract does not arise where one party to the proposed agreement manifests an intent not to be bound until execution of the contract, no contract arose because the commission failed to execute it. Thus, the trial court did not err in dismissing plaintiffs' complaint.

Affirmed.