RIGONI v MICHIGAN POWER COMPANY

Docket No. 64959. Submitted August 2, 1983, at Grand Rapids.—
Decided January 3, 1984. Leave to appeal applied for.

Plaintiffs, Dino and Louise Rigoni, brought an action in the Van
Buren Circuit Court alleging trespass and interference with
their farming operations as a result of the defendant's, Michi-
gan Power Company's, erection of two utility poles and related
wires in an area plaintiffs claimed as their property. The
plaintiffs sought damages and an order to remove the poles and
utility lines. The trial court, Richard N. Loughrin, J., ruled
that the utility poles were within a public right of way and
that plaintiffs had no cause of action. Plaintiffs appeal. *Held:*

1. The trial court's finding that the Van Buren County Road
Commission mowed a five-foot strip beyond the paved portion of
the road more than once a year was clearly erroneous and fails
for insufficient evidence. However, the error is harmless since it
has no effect on the title to the area about 27 feet from the
center of the road occupied by the poles.

2. There was sufficient evidence to support the trial court's
finding that the road commission, on occasion, plowed snow and
threw the snow as far as the plaintiffs' fence, about 29 feet
from the center of the road. The finding was not clearly
erroneous.

3. The trial court's finding ascribing a statement directly to
the road commission may have been clearly erroneous, but it
was also harmless.

4. The statutory rebuttable presumption that a highway
established pursuant to the statute regarding the acquisition of
highways by user is four rods, or 66 feet, wide was rebutted
here since the plaintiffs' fence is within the statutory distance

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*
[3] 23 Am Jur 2d, Dedication § 34 *et seq.*
 39 Am Jur 2d, Highways, Streets and Bridges §§ 60, 158.
[4-6] 39 Am Jur 2d, Highways, Streets and Bridges §§ 52, 53, 61.
[7] 3 Am Jur 2d, Adverse Possession § 6 *et seq.*
 39 Am Jur 2d, Highways, Streets and Bridges § 26.

from the road. Thus the highway cannot be wider than the zone of actual use which meets the test for highways by user.

5. In regard to the defendant's attempt to establish use beyond the paved portion of the road based on four alleged uses: the mowing of a five-foot strip along the pavement is sufficient to establish a public use to that distance; defendant may have established use of the spots upon which a stop ahead sign and mailboxes are located, however, those uses are not effective to establish the highway by user to their distances all along plaintiffs' property. The measure of the width of the highway is the width of the actual use at any one location, not the most distant evidence of public activity in either direction. Neither the sign nor the mailboxes are as far from the pavement as the poles; and seasonal snow plowing which sometimes threw snow all the way to the plaintiffs' fence is insufficient to establish user since it was not a trespass on the land.

6. The road commission did not acquire a "highway by user" of plaintiffs' property which included the location of the utility poles, had no jurisdiction over that portion of plaintiffs' property, and could not give permission to the defendant to place the poles here in dispute.

7. Defendants trespassed upon plaintiffs' land.

Reversed and remanded for a determination of damages and/ or injunctive relief to be determined upon rehearing by the trial court.

1. APPEAL — FINDINGS OF FACT.

Appellate courts may not set aside the findings of fact made by a trial court unless such findings are clearly erroneous.

2. APPEAL — MISTAKES.

Findings of fact by a trial court should be reversed on appeal only if the Court of Appeals is left with the definite and firm conviction that a mistake has been made.

3. HIGHWAYS — HIGHWAYS BY USER — EVIDENCE.

The public may acquire title to a highway by prescription where no formal dedication has ever been made; the acquisition of such a "highway by user" requires evidence of a definite line of travel with definite boundaries, used and worked upon by public authorities, and traveled upon by the public for ten, or in some situations eight, consecutive years without interruption, in an open, notorious, and exclusive manner (MCL 221.20; MSA 9.21).

4. HIGHWAYS — HIGHWAYS BY USER — WIDTH OF HIGHWAYS — USE
   OF HIGHWAYS.

   A rebuttable presumption that a road established pursuant to the
   "highway by user" statute is four rods, or 66 feet, wide arises
   where the elements of a "highway by user" are established;
   evidence that a structure exists within the four-rod statutory
   width, or any other evidence that a landowner retained control
   of an area within the statutory width, is sufficient to rebut the
   presumption and the "highway by user" cannot then be wider
   than the zone of actual use which meets the test for "highways
   by user".

5. HIGHWAYS — HIGHWAYS BY USER — WIDTH OF HIGHWAYS.

   Both need and actual use are required for an activity to add to
   the width of a "highway by user"; therefore, a county's mowing
   of a five-foot strip along the pavement of a highway to provide
   a safe field of vision for transportation may be sufficient to
   establish a public use to that distance (MCL 221.20; MSA 9.21).

6. HIGHWAYS — HIGHWAYS BY USER — WIDTH OF HIGHWAYS.

   The measure of the width of a highway established pursuant to
   the highway by user statute where the statutorily presumed
   width has been rebutted is the width of the actual use of such
   highway at any one location, not the most distant evidence of
   public activity in either direction (MCL 221.20; MSA 9.21).

7. HIGHWAYS — HIGHWAYS BY USER — NOTICE TO LANDOWNERS —
   TRESPASS — SNOW.

   A use has to be of a nature that puts the landowner on notice
   that it is adverse to his title, and that he must interdict it
   somehow to protect his rights, in order for a use to operate to
   establish a highway by user; such use must constitute an
   intrusion upon his property right inconsistent with his posses-
   sion, *i.e.*, it must be a trespass; the propulsion of snow onto a
   person's property during the seasonal snow plowing of a road-
   way is not a trespass upon such property (MCL 221.20; MSA
   9.21).

*Westrate & Holmstrom* (by *Mark A. Westrate),*
for plaintiffs.

*Hadsell, Landgraf & Smith* (by *Robert L. Land-
graf, Jr.),* for defendant on appeal.

Before: V. J. BRENNAN, P.J., and SHEPHERD and
E. A. QUINNELL,* JJ.

V. J. BRENNAN, P.J. Plaintiffs appeal as of right
from a judgment entered against them on May 26,
1982. In their suit, plaintiffs claimed that defen-
dant trespassed on their property when it erected
two utility poles and related wires on an area they
claimed as their property. After a nonjury trial,
the court ruled that the utility poles were within a
public right of way and plaintiffs had no cause of
action.

The key issue in this case is the width of Celery
Center Road in Van Buren County. Plaintiffs live
and farm on property abutting a portion of that
road. They own two neighboring parcels of land
along the road. One is unfenced, and plaintiffs
have farmed it to within five or six feet of the
pavement on Celery Center Road. Plaintiffs pur-
chased the other parcel of property in 1962. This
parcel is fenced, the fence running parallel to
Celery Center Road at a distance of about 29 feet
from its center line. Plaintiffs do not farm outside
of that fence, although they do mow it two or
three times a summer to within five or six feet of
the pavement and have also removed brush from
the area.

Celery Center Road is a local road, treated by
the county as four rods (66 feet) wide. The road
was never formally dedicated as a public highway.
It does not follow a section line, but is on a
quarter section line. Its paved portion is 19 feet
wide. It has no gravelled shoulder and no ditch.
There was evidence of four types of uses which
defendant claims were maintained by the county

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

in the strip of land between the pavement and plaintiffs' fence:

1. Periodic mowing in the summer to a line five feet from the pavement;

2. Two mailboxes for plaintiffs' neighbors, one situated two feet from the pavement, the other four feet back from the pavement;

3. A "stop ahead" sign situated eight feet from the pavement;

4. Snow thrown from snow plowing during the winter reaches all the way to plaintiffs' fence, at least on occasion.

It is undisputed that defendant holds a valid franchise from the local township to run utility lines to customers living there. Defendant also secured verbal permission from a member of the Van Buren County Road Commission staff to erect utility poles along Celery Center Road. On December 13, 1978, defendant received written permission on the standard form used by the road commission. The written permit included language requiring defendant to secure permission from abutting landowners before erecting any poles.

Defendant had tried to secure permission from plaintiffs' neighbors across the road, but was unable to. Without securing permission from plaintiffs, it proceeded in November, 1978, before receiving the permit, to erect the eight poles on plaintiffs' side of the road, next to their fence. The poles are about 27 feet from the center of the road. Defendant had not ascertained whether the road commission had a right of way which included the sites of the utility poles.

Plaintiffs protested, both to defendant and to the county. When work did not stop, they filed suit alleging trespass and interference with their farming operations. Plaintiffs sought damages and an

order to remove the poles and utility lines. The trial court's judgment denied them this relief, and plaintiffs have appealed.

Plaintiffs first argue that the trial court findings were clearly erroneous.

When a trial court makes findings of fact, they must not be set aside by an appellate court unless they are clearly erroneous. GCR 1963, 517.1. A reviewing court must treat the trial court's findings with substantial deference in light of its superior ability to assess the credibility of evidence. *Habersack v Rabaut,* 93 Mich App 300, 304; 287 NW2d 213 (1979). Findings of fact should be reversed only if this Court is left with the definite and firm conviction that a mistake has been made. *Pohl v Gilbert,* 89 Mich App 176, 179; 280 NW2d 831 (1979); *Hartford Ins Group v Mile High Drilling Co,* 96 Mich App 455, 461; 292 NW2d 232 (1980); *Angelo DiPonio Equipment Co v Dep't of State Highways,* 107 Mich App 756, 760; 309 NW2d 566 (1981).

The first finding contested by plaintiffs is rendered in the trial court's opinion as follows:

"The Van Buren County Road Commission mowed a five-foot width east beyond the paved portion of the road at least once each summer and more often, as many as three or four times, when it was able to do so, dependent upon crew and funding available."

There was no evidence in the record that the road commission ever mowed the strip in question more than once a year. The finding not only is clearly erroneous, it fails for insufficient evidence. However, the error is harmless since this is not a case trying to establish the line between plaintiffs' property and that of the road commission with precision. If the five-foot strip is clearly road com-

mission property, it has no effect on title to the area occupied by the utility poles.

The second finding challenged by plaintiffs follows immediately after the first in the record:

"Celery Center Road has been open to public travel during the winter months and the road commission plowed snow from the paved portion and threw the snow as far as the fence."

This is not a finding that the snow always was thrown to the fence, nor that the use was notorious, open, or exclusive. As a finding that snow had at least, on occasion, reached the fence, there was sufficient evidence to support it, including some from one of the plaintiffs. On this basis, the finding was not clearly erroneous.

The final contested finding reads as follows:

"The Van Buren County Road Commission has classified Celery Center Road as a 'local' secondary road in regard to its right of way, under Public Act 51, which is 66 feet or four rods, and it has certified the road to the State of Michigan as a local road for monies returned to the county under that public act. The road commission has considered where there is a monument, such as a fence, that the right of way would go at least to that point. The maintenance of Celery Center Road has included repair of shoulders and of washouts, as well as snow removal.

"The road commission stated it did not surrender dominion over the right of way because it did not mow over one five-foot width and it did plow the throw [sic] snow at least up to the fence as shown in the photographic exhibits."

The only part of this finding upon which there is no evidence is the phrase, "The road commission stated * * *". The road commission never directly made a statement in this litigation since it was not

a party. However, one of its agents did describe the commission's position without objection. The finding accurately represents the content of that testimony. The ascription of the statement directly to the commission may have been clearly erroneous, but it is also harmless.

Next, we address the question of whether there was sufficient evidence to support a finding of "highway by user" over the disputed area.

"Highway by user" is the term given to describe how the public can acquire title to a highway by a sort of prescription where no formal dedication has ever been made. The acquisition of highways by user is governed by MCL 221.20; MSA 9.21:

"Sec. 20. All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for 10 years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used 8 years or more, shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act. All highways that are or that may become such by time and use, shall be 4 rods in width, and where they are situated on section or quarter section lines, such lines shall be the center of such roads, and the land belonging to such roads shall be 2 rods in width on each side of such lines."

This language has been heavily modified by subsequent case law. The elements of a highway by user have been elaborated to require evidence of a defined line of travel with definite boundaries, used and worked upon by public authorities, traveled upon by the public for ten (or in some situations eight) consecutive years without interruption, in a manner open, notorious, and exclusive.

*Alton v Meeuwenberg,* 108 Mich 629, 634-637; 66
NW 571 (1896); *Indian Club v Lake County Road
Comm'rs,* 370 Mich 87, 89; 120 NW2d 823 (1963);
*St Ignace v McFarlane,* 45 Mich App 81, 84-85; 206
NW2d 226 (1973). Nor can the use be by permis-
sion of the landowner. *Pearl v Torch Lake Twp,* 71
Mich App 298, 306-307; 248 NW2d 242 (1976), *lv
den* 399 Mich 844 (1977). If the elements are
established, the statute operates to raise a rebutta-
ble presumption that the road is four rods wide, or
66 feet.

However, if the landowner offers any evidence to
rebut the presumption, the situation changes. Evi-
dence that a structure exists within the four-rod
statutory width, or any other evidence that the
landowner retained control of an area within the
statutory width, is sufficient to rebut the presump-
tion. *Bain v Fry,* 352 Mich 299, 305; 89 NW2d 485
(1958); *Eager v State Highway Comm'r,* 376 Mich
148, 151-152, 154; 136 NW2d 16 (1965); *Laug v
Ottawa County Road Comm,* 37 Mich App 757,
765; 195 NW2d 336 (1972), *lv den* 387 Mich 767
(1972); *Pearl v Torch Lake Twp, supra,* pp 313-314.
The parties agree that the fence is within the
statutory distance from the road. Therefore, the
presumption of a four-rod width is rebutted.

Once the presumption is rebutted, the cases
clearly hold that the highway cannot be wider
than the zone of actual use which meets the test
for highways by user outlined above. *Eager v State
Highway Comm'r, supra,* pp 154-155. Defendant's
attempt to distinguish the important *Eager* case is
in vain. The intrusion maintained by the plaintiffs
in this case may be less substantial than was the
intrusion maintained by the landowner in *Eager*
but it is clearly enough to rebut the presumption.
In *Eager,* the nature and extent of the landowner's

intrusion ceased to be of any importance once the presumption was rebutted. The only question remaining focused entirely on the defendant highway commission's use of the road. The highway could be no wider than the width the defendant was able to show had been actually used as a highway.

"In the instant case there had been no dedication, except as such may be implied or presumed from user for more than the statutory period of repose (*Kruger v LeBlanc,* 70 Mich 76; 37 NW 880 [1888]; *Campau v Detroit,* 104 Mich 560; 62 NW 718 [1895]), but such implied dedication, as last above indicated, applies only to the extent of the user. And for good reason, because the implications of dedication resulting from the owner's permitting uninterrupted public user as a road for the statutory period arises from the fact that such user and statute governing same give the owner notice that, if the means to dispute the rightfulness of the public user, he must assert his right within the statutory period by physical action or suit. *Ellsworth v Grand Rapids,* 27 Mich 250 (1873). Such notice could not be said to apply to lands not included in the public user. Certainly the owner is not required to dispute the rightfulness of a nonexistent user. The acceptance, by user, cannot exceed the amount of actual or implied dedication." *Eager v State Highway Comm'r, supra,* pp 154-155. (Footnote omitted.)

See also *Scheimer v Price,* 65 Mich 638, 639; 32 NW 873 (1887); *Yonker v Oceana County Road Comm,* 17 Mich App 436; 169 NW2d 669 (1969); *Pearl v Torch Lake Twp, supra,* p 314.

Defendant has attempted to establish use beyond the paved portion of Celery Center Road based on four alleged uses:

1. Summertime mowing of the grass out to five feet from the pavement;

2. Placement of mailboxes up to four feet from the pavement;

3. Placement of a "stop ahead" sign eight feet from the pavement;

4. Throwing snow all the way to the fence during winter snow plowing.

The first use, mowing a five-foot strip along the pavement, is sufficient to establish a public use to that distance. Mowing is an example of a public use which would be adequate proof to establish the width of a highway by use as in *Pearl v Torch Lake Twp, supra,* p 314. There, as here, it was a use needed to make the easement effective for its purposes, primarily to provide a safe field of vision for transportation, as well as being a use which was actually made. Both need and actual use are required for an activity to add to the width of a highway by user. *Platt v Ingham County Road Comm,* 40 Mich App 438, 440; 198 NW2d 893 (1972).

Defendant may also have established use of the spots upon which the sign and the mailboxes are set. (Note the Court's comment about the catch basin in *Eager v State Highway Comm'r, supra,* p 155.) However, those uses are not effective to establish the highway by user to their distances all along plaintiffs' property. The measure of the width of the highway is the width of the actual use at any one location, not " 'the most distant evidence of public activity in either direction' ". *Laug v Ottawa County Road Comm, supra,* p 767. In *Laug,* the defendant proved a use over 55 feet wide in one spot near the plaintiff's land, but the Court rejected the defendant's argument that it had established a highway by user 55 feet wide all along plaintiff's land.

It does not matter if defendant is able to show

that the county has a right of way all the way out to a line drawn from the stop ahead sign parallel to the pavement. This case is not one trying title to the land, or setting boundaries; it is only concerned with whether or not the utility poles are in the right of way. Neither the sign nor the mailboxes are as far from the pavement as the poles.

Defendant argues that a use that would include the poles in the highway is the deposit of snow when snowplows throw it all the way to the fence. While plaintiffs do not contest that snow plowing is a use necessary to the purpose of the easement, they dispute that the area upon which the plowed snow falls is actually being used. Seasonal snow plowing, throwing snow outside the mower line, is insufficient to establish user.

As the *Eager* Court made clear, in order for a use to operate to establish a highway by user, it has to be of a nature that puts the landowner on notice that it is adverse to his title, and that he must interdict it somehow to protect his rights. *Eager v State Highway Comm'r, supra,* pp 154-155. The use must somehow constitute an intrusion upon his property right inconsistent with his possession, *i.e.,* it must be a trespass.

We have found no cases in any jurisdiction *holding* the propulsion of snow onto another person's property to be a trespass. We find that in this case, seasonal roadway snow plowing did not put the landowner on notice that it was adverse to his title and, therefore, was not a trespass on his land.

We find further that the road commission did not acquire a "highway by user" of plaintiffs' property, which included the location of the utility poles. The road commission had no jurisdiction over that portion of plaintiffs' property, therefore, it

could not give permission to the defendant to place the poles here in dispute. We find a trespass by defendant upon plaintiffs' lands.

Reversed and remanded for determination of damages and/or injunctive relief to be determined upon rehearing by the trial court.