**COMPLETE AUTO TRANSIT, INC., and Fireman's Fund Insurance Company, Plaintiffs in Error,**

v.

**Nellie L. REESE, Defendant in Error.**

No. 41563.

Supreme Court of Oklahoma.

March 21, 1967.

Hudson, Wheaton & Brett, Tulsa, for plaintiffs in error.

Arthurs, Blackstock & McMillan, by Herbert L. Arthurs, Bristow, for defendant in error.

BERRY, Justice.

Defendant in error, plaintiff in the trial court, sued to recover damages for personal injuries received in an accident which occurred February 24, 1964, involving her automobile and defendant's truck. Defendant, and its insurance carrier, admitted that negligence of defendant's driver was the proximate cause of plaintiff's injury and damages. A demurrer was sustained to the evidence as against another named defendant, but no issue arises on appeal in that respect.

The petition alleged plaintiff's injuries consisted of: (a) severe shock to her entire nervous system; (b) whiplash to the upper spine, permanently stretching and damaging the nerves leading from the upper spine to the upper extremities; (c) straightening of the normal cervical curve to the spine; (d) injury to the lower back; (e) severe headaches and vertigo; (f) post concussion syndrome causing psychic personality changes.

The petition claimed damages of $89,-832.00 for loss of earning capacity; the sum of $37,435.00 for past and future pain and suffering; past and future medical expense of $7,963.23; and $783.47 for total destruction of plaintiff's 1958 model Ford automobile. It was stipulated that plaintiff's life expectancy was 42.16 years.

The sole issue presented for the jury's determination involved the nature and extent of plaintiff's injuries and damage. The jury returned a verdict of $80,500.00, upon which judgment was entered. After motion for new trial was overruled, defendants perfected this appeal.

The three propositions urged on appeal attack the propriety of the judgment in view of the evidence submitted to the jury upon the grounds: (1) error in admission of speculation and conjectural evidence as to the alleged loss of earning capacity; (2) the amount of the verdict measured by evidence of damages sustained by plaintiff is so excessive and exorbitant as to shock the conscience of the court; (3) error in giving particular instructions in view of the evidence.

The evidence was that after the accident plaintiff was x-rayed and received emergency treatment at a Bristow hospital

and returned home to care for her children. Reentering the hospital the following day she received traction, diathermy and ultra sound treatments for two weeks. After release from the hospital treatment continued at home and in her physician's office. In June, 1964, plaintiff was readmitted to the hospital where she remained under treatment for three weeks. Plaintiff was under treatment at the time of trial and still suffering pain, and was unable to do her housework or care for her children as she had done prior to the accident. Plaintiff had been unable to return to school and complete her course of study in the operation of business machines, as a prerequisite to finding employment.

The attending physician testified to findings following plaintiff's admission and first examination in the hospital, which disclosed " * * * severe tenderness in the lower portion of the neck and upper portion of the back; x-rays revealed a straightening of the normal curvature of the neck." The first x-rays showed marked spasm of the neck muscles interfering with normal curvature. Upon hospital admission plaintiff was placed under conservative therapy, i. e., cervical traction, deep heat and ultra sonic treatments, pain killers, bedrest, sedatives and whirlpools. Other x-ray films made two days after the accident showed straightening and almost a reversal of the neck curve. Plaintiff was dismissed from the hospital with final diagnosis of " * * * contusion of the cervical and thoracic vertebrae, possibly of the lumbar sacral area and also cerebral concussion."

Plaintiff continued as an outpatient and, because of continued discomfiture, was sent to Dr. Stowell in Tulsa for examination and advice, who recommended further hospitalization and conservative therapy. Because plaintiff was unable to reenter the hospital, the doctor furnished a cervical traction apparatus to be used at home in an attempt to relieve intermittent muscle spasms. After a final three weeks hospitalization plaintiff's condition had remained static for the last six-eight months, and on November 6, 1964, x-rays indicated presence of a definite muscle spasm and straightening of the cervical curve. Plaintiff had not responded fully to conservative therapy and there was no reason to expect any improvement. The physician's opinion was that plaintiff was unable to sit and work on business machines for extended periods; she had suffered great pain and was expected to experience pain in the future, which limited the ability to do even her household work. The conditions described were permanent.

The neuro-surgeon (Dr. S) who examined plaintiff at the request of her physician, Dr. M, testified to having found some motion limitation in the lumbar area; muscle tightness and limitation of motion in the shoulder with tenderness in the back of the neck and limitation of motion; some strain in the neck from excessive head movement in the accident, and "a scalene syndrome and rather tight muscles causing pressure on the nerves intermittently of possibly the head and arms."

The doctor testified that for plaintiff to sit and operate business machines and use her arm in a particular position, would increase the difficulty she might not have if not doing that type of work. Plaintiff had no paralysis or numbness which would produce such difficulty over a period of time, " * * * but we felt that the use of the arm on this particular type of machine would be intermittently painful to her." The accident directly caused the pressure on the nerve root by the muscle, and there was permanency in the condition. Upon the basis of his findings the physician testified plaintiff had the ability to do household chores, but off and on there would be pain and occasional numbness produced by tension on the muscles and nerves; plaintiff has no paralysis, but such things as hanging up clothes or scrubbing floors for any length of time would produce pain. Plaintiff suffered a certain amount of pain off and on, and would

continue to suffer pain in the future depending upon her activities; physically plaintiff would be able to hold down a steady job requiring work with her hands while sitting at an office machine, but the amount of time spent at the job would depend upon the pain, which would interfere with her efficiency.

Cross-examination established that x-rays revealed no evidence of fractures, dislocations or disc pathology, and no evidence of straightening of the normal curve (of the neck); other x-rays of the spine and low back were normal; there was no numbness or weakness in the upper arm and no aggravating factors in regard to the neck or lumbar spine; the scalenus anticus syndrome is a muscular condition evidenced by swelling, increase in size or tension of the muscle. Plaintiff's trouble is increased tension of the scalene muscle, which condition is operable and probably would be relieved by surgery, which had been recommended if plaintiff experienced too much difficulty; such surgery required about five days hospitalization and usually is successful.

Additional medical testimony established the correctness of the amounts claimed for medical expenses. There was further testimony that future annual medical expenses on the average would compare to the total expenses of the last nine months prior to trial.

Plaintiff testified concerning the facts of the accident and the nature, extent and symptoms of her injury. Plaintiff also testified that after her divorce in January 1960, she had been employed by a garment factory at an hourly wage of $1.15, but there was no evidence concerning duration of such employment. And, this evidence was controverted by plaintiff's deposition testimony that she had not been employed following the divorce. Plaintiff further testified that she had been unable to support herself and family. In an effort to accomplish this, she enrolled in Tulsa Technical College, where she was learning to operate various types of business machines, generally attending school four days each week from 9 A.M. to 2:45 P.M. At the date of the accident plaintiff lacked only two weeks schooling to complete her training.

The Dean of Tulsa Technical College (Hoff) testified plaintiff had enrolled in September 1963, taking courses in filing, secretarial accounting and business machines; six months time was required to complete her course of study, and plaintiff was an above average student; this school consistently places its graduates on a national basis, without guarantee as to area or type of job. The witness testified that, had plaintiff finished her course of study, he would have been able to place plaintiff in a job at a starting salary of approximately $305.00 per month.

Two witnesses testified for plaintiff to establish value of the car. An automobile dealer who had never seen the vehicle fixed the value of this 1958 Ford at $650.00–$750.00 before the accident, based upon a hypothetical question relating to description and condition of the car. The other witness, operator of a body and wrecker shop testified the car could not be repaired; that he could tell the car was in excellent condition prior to the accident, and was worth $725.00–$750.00 before the accident, but only $75.00 for salvage afterward.

Defendants first contend the trial court erred in admitting testimony as to plaintiff's loss of earning capacity, such evidence being conjectural, speculative and highly prejudicial. It is argued that plaintiff had no loss of earnings because unemployed at the time, and that testimony as to possible earnings had she finished her schooling was not reasonably certain but highly speculative and conjectural. The evidence relative to plaintiff's earning capacity, including her own testimony which raised a question as to her credibility, is summarized above. Primarily defendants' complaint is that, having established no earning capacity prior to the accident, the evidence as to what she could

have earned after completion of training as a business machine operator did not show any loss of future earning capacity.

The text rule, 22 Am.Jur.2d, Damages § 92, states that an element of damages for impairment of a plaintiff's earning ability is the decrease in earning capacity. The recovery is for injury to the capacity to earn, and not for loss of earnings. Upon this basis an unemployed plaintiff is entitled to recover for loss of earning capacity, despite inability to show specific loss of earnings. A pertinent application of these principles may be observed in Connolly v. Pre-Mixed Concrete Co., 49 Cal.2d 483, 319 P.2d 343, wherein an amateur tennis player who intended to become a professional but was prevented from doing this by a negligent injury, recovered a substantial judgment based in part upon loss of the future capacity to earn. Also see Turrietta v. Wyche, 54 N.M. 5, 212 P.2d 1041, 15 A.L.R.2d 407, and annotations. Also see Hembree v. Southard, Okl., 339 P.2d 771, wherein our Court recognized that injury resulting in loss of future earning capacity after reaching majority was a proper element of consideration.

We are of the opinion the trial court properly admitted evidence bearing upon the plaintiff's loss of future earning capacity. Having reached this conclusion, defendants' further claim of error inhering in the trial court's instructions dealing with plaintiff's loss of earning capacity lacks substantial merit.

Defendants next contend the judgment in this case is so exorbitant as to shock the conscience of the court, when measured by the evidence offered to show the legal damages sustained. The argument is based upon defendants' interpretation of the evidence, as respects the credibility of the witnesses, and the weight to be accorded the evidence bearing upon the nature and extent of plaintiff's injuries. Upon case authority from other jurisdictions indicating that judgments for "similar whiplash injuries" range below $10,000.00, defendants

conclude that because there was no loss of actual earnings, and because " * * * the evidence shows no loss of future earning capacity", the verdict presently involved must be classified as being so excessively exorbitant as to shock the conscience of the court.

We recognize that in determining whether a verdict for damages for personal injuries is excessive requires consideration of the individual case upon its own facts and circumstances. Oklahoma Ry. Co. v. Strong, 204 Okl. 42, 226 P.2d 950. In that case we also stated that in considering the question of excessiveness of a verdict recourse might be had to the amounts of verdicts in similar cases. Upon this premise, attention is directed to our decision in Booth Tank Co. v. Symes, Okl., 394 P.2d 493. In the latter case a farm wife having a life expectancy of 16.43 years, whose earning capacity, based upon intermittent baby sitting and sale of butter and eggs, was found to have suffered loss of earning capacity of approximately $1,000.-00 per year. In affirming a verdict for damages of $70,000.00 we again pointed out the lack of any absolute standard for measurement of damages for personal injuries, so that the question must be left to the sense and discretion of the jury. In the body of that case we quoted syllabus 3 of Carraco Oil Co. v. Morhain, Okl., 380 P.2d 957:

> "In an action for personal injuries a verdict will not be set aside for excessiveness for damages unless it clearly appears that the jury committed some gross and palpable error, or acted under some improper bias, influence or prejudice or has totally mistaken the rules of law by which damages are regulated."

Review of the multitude of decisions involving claimed excessiveness of verdicts for personal injuries not resulting in death, may be observed in 46 A.L.R. 1234; 102 A.L.R. 1125; 16 A.L.R.2d 3. The finding of the amount of damages for personal injury and impairment of health are exclusively within the province of the jury.

On appeal the only question is whether the verdict and judgment are within the permissible limits disclosed by evidence. As to this jury determination, absent bias, prejudice and palpable error, this Court is not permitted to place limitations thereon. Walton v. Bennett, Okl., 376 P.2d 240, and cases cited.

■ The evidence was directed toward showing loss of future earning capacity, past and future pain and suffering and past and future medical expenses. No rule appears more firmly settled than that the cause, nature and extent of damages resulting from negligence are exclusively determinable by the trier of the facts. In this case the cause was admitted. The evidence summarized, relative to the nature and extent of plaintiff's injuries, discloses support for the jury's verdict. No gross or palpable error or mistake of law appears, and nothing within the record reflects bias, prejudice or existence of improper influence. The amount of the verdict rendered was well within the permissible limits disclosed by the evidence, and defined by the trial court's instructions. States Exploration Co. v. Reynolds, Okl., 344 P.2d 275; Bunch v. Perkins, 198 Okl. 517, 190 P.2d 664.

■ Defendants finally urge error in respect to the trial court's instructions (Nos. 6–8), by which the jury was advised as to the measure of damages to be applied for loss of plaintiff's automobile. The complaint is that there was no evidence to show reasonable market value before the accident. There was testimony the car was a "clean" car and above average for that model, except for extensive damage to the left side, which made repair unfeasible; that a "clean" car was worth approximately $750.00. There was other testimony that fixed value before the accident. There was no requirement that plaintiff introduce evidence of the price paid originally as a factor in determining value before and after the accident. The instruction given to the jury has been approved in the form given many times

since Marland Refg. Co. v. Duffy, 94 Okl. 16, 220 P. 846, 35 A.L.R. 52. The petition asserted a separate item for damages to plaintiff's car. The verdict rendered was a general verdict. No objection was made as to the form of the verdict, or the failure to separate the items of damage included therein. From the form of the verdict it is not possible to ascertain what amount, if any, was fixed as damages for destruction of the automobile. If a portion of the verdict rendered included such item, the total recovery still was within permissible limits.

Judgment affirmed.

JACKSON, C. J., IRWIN, V. C. J., and WILLIAMS, BLACKBIRD, HODGES, LAVENDER and McINERNEY, JJ., concur.