PRECOPIO v CITY OF DETROIT

Docket No. 64690. Argued January 7, 1981 (Calendar No. 10).—Decided December 23, 1982.

Robert Precopio brought an action against the City of Detroit in the Wayne Circuit Court for damages arising out of a motor vehicle accident involving a city bus. After mediation failed, the circuit court, Charles Kaufman, J., sitting as the trier of fact, found the city liable in the amount of $436,085 and permitted the plaintiff to amend his complaint to conform to the award. The Court of Appeals, T. M. Burns, P.J., and MacKenzie, J. (M. F. Cavanagh, J., dissenting), affirmed (Docket No. 78-2336). The city appeals.

In an opinion by Justice Levin, joined by Chief Justice Fitzgerald and Justices Kavanagh, Williams, Coleman, and Ryan, the Supreme Court *held:*

The amounts awarded by the trial court for past and future pain and suffering, humiliation, loss of power in the hand, and future medication were excessive, and the case is remanded for entry of a judgment of $132,900.

1. Awards for personal injury should rest within the sound judgment of the trier of fact, particularly awards for pain and suffering. There is no absolute standard by which such awards may be measured. In reviewing damage awards in cases tried to juries, the Supreme Court has looked to whether the award shocks the judicial conscience, appears unsupported by the proofs, or appears to be the product of improper methods, passion, caprice, or prejudice. If the award fell within the range of the evidence and the limits of what reasonable minds would deem just compensation for the injury sustained, the verdict has not been disturbed. The scope of review in non-jury cases, however, is broader, and the "clearly erroneous" standard is applied. Under that standard, a reviewing court must substitute its own appraisal of the record where a review of the whole record leaves the court with a definite and firm convic-

REFERENCES FOR POINTS IN HEADNOTES
[1] 22 Am Jur 2d, Damages § 109.
[2-4] 22 Am Jur 2d, Damages § 366.

tion that the trial court made a mistake. The standard applies to findings of fact generally and to the amount of damages. If the amount is excessive, it may be set aside on appeal.

2. In this case, the award for damages was excessive. The proofs do not justify an award for past and future pain and suffering of $375,000. The burden of proof to justify compensation is on the plaintiff and the amount of compensation must be established with reasonable certainty. In reappraising damage awards, the Supreme Court has followed a rule of just compensation based on the evidence. Where the amount awarded outruns the reasonable range demonstrated by the proofs, the case may be remanded for a new trial; where the Court otherwise approves the trial court's finding of liability, it may reduce damages or condition affirmance upon the plaintiff's acceding to a *remittitur.* Whether the reviewing court orders remand, reduction, or *remittitur,* it either determines the amount by which the finding of damages exceeds the reasonable range of awards supported by the proofs or defines the highest reasonable award on the basis of the proofs in order to adjudge as excessive the amount awarded. Analogous non-jury cases may be considered which, along with the record, may demonstrate a reasonable range for awards for injuries such as the plaintiff's. In this case, the highest reasonable award for past and future pain and suffering and for humiliation and the plaintiff's loss of power in his hand is $75,000. The reasonable amount of an award for the plaintiff's future medications is $6,500. The award of the trial court for past and future wage losses in the amount of $51,400 was reasonable.

Reversed and remanded.

94 Mich App 506; 289 NW2d 34 (1979) reversed.

1. DAMAGES — PERSONAL INJURY — MEASURE — PAIN AND SUFFERING.

There is no absolute standard by which awards for personal injury, particularly awards for pain and suffering, may be measured; such awards should rest within the sound judgment of the trier of fact.

2. DAMAGES — PERSONAL INJURY — APPEAL — STANDARD OF REVIEW.

The standard of review of personal injury awards in cases tried to juries is whether the award shocks the judicial conscience, appears to be the product of improper methods, passion, caprice, or prejudice; in non-jury cases, the "clearly erroneous" standard of the court rules is applied to findings of fact and the amount of damages, and when, even though there is some

evidence to support a finding of fact, a review of the record leaves the court with a definite and firm conviction that the trial court made a mistake, it must substitute its own judgment (GCR 1963, 517.1).

3. DAMAGES — PERSONAL INJURY — EXCESSIVE DAMAGES — APPEAL — *REMITTITUR.*

   The burden of proof in personal injury cases is on the plaintiff to establish injury and to justify the amount of damages with reasonable certainty; upon review, compensation must be just on the basis of the evidence, and where the amount of an award exceeds the reasonable range demonstrated by the proofs the case may be remanded for a new trial, or where the reviewing court otherwise approves the trial court's finding of liability it may reduce the damages or condition affirmance upon the plaintiff's accession to a *remittitur.*

4. DAMAGES — PERSONAL INJURY — EXCESSIVE DAMAGES — APPEAL.

   A reviewing court, in reappraising a personal injury award, must either determine the amount by which the award exceeds the reasonable range of awards supported by the proofs or define the highest reasonable award on the basis of the proofs; analogous non-jury awards may be considered which, along with the record, may demonstrate a reasonable range.

*Zeff & Zeff* (by *A. Robert Zeff*) for the plaintiff.

*George W. Crockett, Jr.,* Acting Corporation Counsel, and *Ronald W. Rice,* Principal Assistant Corporation Counsel, for the city.

Amici Curiae:

*Jeannette A. Paskin* for the Association of Defense Trial Counsel.

*Albert Lopatin* for Michigan Trial Lawyers Association.

LEVIN, J. We granted leave to appeal to consider whether defendant City of Detroit's claim that the portion of the damage award to compensate for past and future pain and suffering in respect to

plaintiff Robert Precopio's soft-tissue injury is excessive. We find the award to be excessive and remand for entry of a judgment of $132,900.

On September 30, 1972, a DSR bus struck Robert Precopio's automobile. The accident occurred before the adoption of the no-fault automobile liability act. Precopio commenced an action against the City of Detroit, seeking "a judgment that is fair and just in accordance with the facts produced in court, but in no case to exceed the sum of two hundred thousand ($200,000.00) dollars".

After mediation failed to produce an acceptable settlement, the case was tried without a jury before a circuit judge. The witnesses were Precopio, the bus driver, a passenger, Precopio's physician, and a physician who examined Precopio for the city.

Three witnesses offered conflicting testimony on the issue of liability. Precopio testified that he had stopped at a red light when the bus struck the rear of his automobile. The bus driver and the passenger testified that Precopio had abruptly changed lanes, without signaling or first determining the safety of his maneuver, before he made a sudden stop in front of the bus.

On the damage issue, Precopio testified that he did not undergo hospitalization either immediately following the accident or at any time before the trial. On the day following the accident, he began to experience pain in the back of his neck and, when he bent down to complete a task during his work as a spot sander, he found that he could hardly straighten up. He then consulted his family physician who prescribed heat treatments, injections, and medication.

Precopio testified that he continued to consult

his physician once a week and sometimes twice a week during his first eight-month absence from work after the accident. Although he could not pinpoint the dates, Precopio said that he also missed work for eight months during 1975, that he missed two months in 1976, and that up to the time of trial he continued to miss approximately ten days a year as a result of pain from his injury.

The judge took the case under advisement and, a number of months later, issued an opinion finding the city liable and assessing Precopio's damages at $436,085. The judge permitted Precopio to amend the *ad damnum* clause of his complaint to conform with the judgment.

A divided panel of the Court of Appeals affirmed. The dissenting judge would have reversed and remanded for a new trial, stating that the amount of damages awarded shocked the judicial conscience and that the damages were unsupported by the proofs.[1]

We affirm the judge's finding on liability and agree that he properly permitted Precopio to amend the *ad damnum* clause to conform to the award. We reverse the Court of Appeals on certain elements of the damage award, for a review of the record persuades us that excessive amounts were awarded for past and future pain and suffering, humiliation, and "loss of power in his hand" and for "future medications".

## I

The city contends that the evidence clearly preponderates against the judge's finding of liability. In the city's view, the judge erred in disregarding the corroborating accounts of the bus driver and

---

[1] *Precopio v Detroit,* 94 Mich App 506; 289 NW2d 34 (1979).

the passenger, whose testimony conflicted in certain irrelevant particulars, and in fully crediting Precopio's account of the accident although the city had impeached Precopio's truthfulness in answering similarly peripheral questions. The city also argues that it produced credible evidence to rebut the statutory presumption of negligence in a rear-end collision,[2] upon which the judge relied, and that, absent the presumption, Precopio failed to carry his burden of proof on negligence.

The court rule provides: "Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it." GCR 1963, 517.1. This Court has said: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[3] In so holding, the Court acknowledged the superior vantage point of the trial judge in evaluating credibility.[4] On examination of this record we are not left with a definite and firm conviction that the judge erred in finding that the city was causally negligent.[5]

---

[2] See MCL 257.402(a); MSA 9.2102(a).

[3] *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976), quoting *United States v United States Gypsum Co,* 333 US 364, 395; 68 S Ct 525, 542; 92 L Ed 746, 766 (1948).

[4] *Tuttle,* fn 3 *supra,* pp 46-47, fn 3; *Columbus Pipe & Equipment Co v Sefansky,* 352 Mich 539, 543; 90 NW2d 492 (1958).

[5] Precopio testified that he had stopped for a red light in the left lane of eastbound Vernor at the intersection of Clark when the bus suddenly struck his automobile in the rear. The lawyer for the city impeached Precopio's testimony that he occupied the "left lane" with his answer to an interrogatory which stated that he occupied the right lane. Precopio's testimony contained other peripheral inconsistencies.

The bus driver testified that he first noticed Precopio traveling in

## II

The city contends that the judge erred in allowing Precopio to amend the *ad damnum* clause of his complaint to conform with the amount of damages ultimately awarded.

In *Gibeault v Highland Park,* 391 Mich 814; 217 NW2d 99 (1974), this Court adopted the analysis of the Court of Appeals in *Gibeault v Highland Park,* 49 Mich App 736, 738-741; 212 NW2d 818 (1973), and disavowed contrary dictum in *Phillips v Rolston,* 376 Mich 264, 268-269; 137 NW2d 158 (1965), which had ignored the pertinent language of GCR 1963, 518.3: "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

The city asserts that permitting amendment of

front of him about seven or eight blocks before the accident. Since Precopio was traveling at about 10 miles an hour, the bus driver passed him; however, the driver testified that, as the vehicles approached Clark, Precopio cut in front of the bus and hit his brakes. Because "you can't make an emergency stop," the driver testified that he "applied my brakes hard enough to get the weight off the coach" in order to lessen the impact. The bus hit Precopio's vehicle about half a block before the stoplight. The bus driver testified that he had not yet stopped to take on or let off passengers at the bus stop on the far side of Clark.

The passenger testified that at the time of the accident he occupied the third seat on the driver's side behind the bench seat running parallel to the length of the bus. Another passenger had just disembarked, and the bus had begun to increase its speed when Precopio's car passed the bus rapidly and began to fishtail. Precopio's brake lights went on, and the bus driver "jam[med] on the brakes" and "slightly skidded into the back of the car". The passenger also testified that he remembered neither an intersection nor a traffic light near the scene of the accident. He subsequently testified that the accident occurred on the other side of the Vernor-Clark intersection.

Both sides thus presented testimony not without its weaknesses. The judge evaluated the credibility of the witnesses and did not clearly err in choosing between conflicting accounts.

the *ad damnum* clause in this case applies *Gibeault* retroactively to a complaint filed before the *Gibeault* decision. The language of the court rule spoke clearly to the issue and was recognized as authoritative in *Piatkowski v Mok,* 29 Mich App 426; 185 NW2d 413 (1971). As this Court's order in *Gibeault* noted, only dictum in *Phillips v Rolston* provided an apparently conflicting construction.[6]

## III

The city contends that the damage award was clearly excessive. The following items of damage comprise the award:

| | |
|---|---:|
| Property Damage | $   650 |
| Past Medical | 535 |
| Past Wage Loss | 31,400 |
| Future Wage Loss | 20,000 |
| Future Medications | 8,500 |
| | $ 61,085 |
| Past and Future Pain and Suffering | $375,000 |
| Total Award | $436,085 |

The city raises no objection to the portions of the award for property damage and for past medical expenditures, but contends that the remainder of the award clearly exceeds the range reasonably supported by the proofs, and asks that we either order a new trial or reduce the award.

As both parties acknowledge, decisions of this Court state that awards for personal injury should rest within the sound judgment of the trier of fact, particularly awards for pain and suffering, and recognize that there is no absolute standard by

---

[6] See 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), annotations to Rule 518 in cumulative supplement under heading Relief as related to demand for judgment—amount demanded.

which to measure such awards.[7] Such deference in part reflects recognition that the trier of fact observes live testimony, while an appellate court reviews a printed record.[8] In a case tried to a jury, such deference may further reflect a reliance on the communal judgment of the members of the jury in awarding monetary compensation for such imponderables as pain and suffering.[9]

In reviewing damage awards in cases tried to juries, this Court has asked whether the award shocks the judicial conscience, appears unsupported by the proofs, or seems to be the product of improper methods, passion, caprice, or prejudice; if the amount awarded falls reasonably within the range of the evidence and within the limits of what reasonable minds would deem just compensation for the injury sustained, the verdict has not been disturbed.[10]

The instant action was tried before a judge sitting without a jury. We again note that Rule 517.1 governs appellate review of bench trials.[11] In

[7] See *Weil v Longyear,* 263 Mich 22, 26; 248 NW. 536 (1933); *Watrous v Conor,* 266 Mich 397, 401; 254 NW 143 (1934); *Cleven v Griffin,* 298 Mich 139, 141; 298 NW 482 (1941); *Day v Troyer,* 341 Mich 189, 201; 67 NW2d 74 (1954); *O'Grady v Rydman,* 347 Mich 606, 612; 81 NW2d 383 (1957); *Stevens v Edward C Levy Co,* 376 Mich 1, 5; 135 NW2d 414 (1965); *Stowers v Wolodzko,* 386 Mich 119, 141-142; 191 NW2d 355 (1971); *Moore v Spangler,* 401 Mich 360, 372; 258 NW2d 34 (1977).

[8] GCR 517.1 acknowledges the "special opportunity" of the trial judge in assessing the credibility of witnesses. See *Collins v Hull,* 256 Mich 507; 240 NW 37 (1932).

[9] See *Watrous,* fn 7 *supra,* p 401; *Schneider v Pomerville,* 348 Mich 49, 54; 81 NW2d 405 (1957); *Tuttle,* fn 3 *supra,* pp 46-47, fn 3.

[10] See *Cleven,* fn 7 *supra,* p 141; *Weeks v Hyatt,* 346 Mich 479, 490; 78 NW2d 260 (1956); *Aho v Conda,* 347 Mich 450, 455-456; 79 NW2d 917 (1956); *Stevens,* fn 7 *supra,* pp 5-6; *Stowers,* fn 7 *supra,* pp 141-142.

[11] Rule 517.1 now embodies a single standard of review for all non-jury cases. See GCR 810 and 859; 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 596.

*Tuttle v Dep't of State Highways,* 397 Mich 44; 243
NW2d 244 (1976), this Court noted that Rule 517.1
tracks the language of the "clearly erroneous" rule
embodied in Rule 52(a) of the Federal Rules of
Civil Procedure, and declared that a reviewing
court must substitute its own appraisal of the
record when, even though some evidence supports
a finding of fact,[12] a review of the whole record
leaves the appellate court with a definite and firm
conviction that the judge made a mistake.[13] Thus,

Our review of a trial court's discretionary grant or denial of a
motion for a new trial on the ground of inadequate or excessive
damages turns upon our evaluation of the damage finding as clearly
erroneous in non-jury cases, or as shocking to the judicial conscience
or beyond the proofs or secured by improper methods, prejudice,
caprice, or passion in jury cases. See *Brown v Arnold,* 303 Mich 616,
627; 6 NW2d 914 (1942); *Bishop v Plumb,* 363 Mich 87, 104-105; 108
NW2d 813 (1961); *Ferretti v Gergely,* 366 Mich 359, 365; 115 NW2d 74
(1962); *Moore v Spangler,* 401 Mich 360, 372-373; 258 NW2d 34 (1977).

If the standard of review for the finding of fact and for the grant or
denial of a motion for a new trial did not overlap, then an unsuccess-
ful attempt to persuade a trial judge during a post-trial proceeding to
recalculate the damage award would cloak the finding of fact with
greater protection from review. A party seeking to overturn the
finding would forego a second evaluation by the trial judge if a post-
trial motion triggers a higher standard of review than the standard
for reviewing the finding.

[12] In the years immediately following the promulgation of Rule
517.1, this Court sometimes stated that an appellate court should not
disturb findings of fact and substitute its judgment on questions of
fact unless the evidence clearly preponderated against the findings; if
any evidence supported the findings, the reviewing court should
affirm the judgment. *Ins Co of North America v Schuneman,* 373
Mich 394; 129 NW2d 403 (1964).

[13] In *Tuttle,* this Court adopted the test which the United States
Supreme Court has approved under the analogous federal rule.
*United States v United States Gypsum Co,* 333 US 364, 395; 68 S Ct
525, 542; 92 L Ed 746, 766 (1948). See also *Hughson v O'Reilly,* 7 Mich
App 324; 151 NW2d 888 (1967); *BPA II v Harrison Twp,* 73 Mich App
731; 252 NW2d 546 (1977), *lv den* 401 Mich 819 (1977); *Rockwell &
Bond, Inc v Flying Dutchman, Inc,* 74 Mich App 1; 253 NW2d 368
(1977), *lv den* 402 Mich 809 (1977); *Wayne County Dep't of Health v
Olsonite Corp,* 79 Mich App 668; 263 NW2d 778 (1978), *lv den* 402
Mich 845 (1978); *Kersten v DAIIE,* 82 Mich App 459; 267 NW2d 425
(1978), *lv den* 403 Mich 845 (1978); *Pohl v Gilbert,* 89 Mich App 176;
280 NW2d 831 (1979), *lv den* 406 Mich 981 (1979); *The William C
Reichenbach Co v Michigan,* 94 Mich App 323; 288 NW2d 622 (1979);
*The Hartford Ins Group v Mile High Drilling Co,* 96 Mich App 455;

in a non-jury case, the scope of appellate review is broader than in a jury case.[14]

The United States Courts of Appeals have determined that the clearly erroneous standard, applicable to findings of fact in general, also applies to a finding of the amount of damages, which, if excessive, may be set aside upon appeal.[15]

292 NW2d 232 (1980); *Hollis v Zabowski,* 101 Mich App 456; 300 NW2d 597 (1980). See also this Court's order in *Mazur v Blendea,* 409 Mich 858; 294 NW2d 827 (1980), directing the use of the "clearly erroneous" standard of review in non-jury cases, rather than a standard which determines whether the verdict is against the great weight of the evidence.

[14] See *Schneider,* fn 9 *supra,* p 54; *Tuttle,* fn 3 *supra,* pp 46-47, fn 3; *Hi-Way Motor Co v International Harvester Co,* 398 Mich 330, 339; 247 NW2d 813 (1976).

The standard of appellate review for non-jury trials does not implicate the standard for review of jury trials. As to the latter, see *Alder v Flint City Coach Lines,* 364 Mich 29, 31; 110 NW2d 606 (1961).

We note that the United States Supreme Court has declined to apply the Seventh Amendment guarantee of a jury trial in a civil case to the states through the Fourteenth Amendment. See *Melancon v McKeithen,* 345 F Supp 1025, 1032-1045 (ED La, 1972), aff'd 409 US 1098 (1973); *Palko v Connecticut,* 302 US 319, 325; 58 S Ct 149; 82 L Ed 288 (1937).

[15] "It is well settled in the circuits that when the trial is before a court without a jury the determination of damages is a question of fact and that an assessment of damages can be reversed when 'clearly erroneous' just as can any other finding of fact. *United Mine Workers of America v Osborne Mining Co,* 279 F2d 716 (CA 6, 1960); *Apex Mining Co v Chicago Copper & Chemical Co,* 340 F2d 985 (CA 8, 1965); *Cunningham v Rederiet Vindeggen A/S,* 333 F2d 308 (CA 2, 1964); *United States v Horsfall,* 270 F2d 107 (CA 10, 1959); *Sanders v Leech,* 158 F2d 486 (CA 5, 1946)." *Traylor v United States,* 396 F2d 837, 839 (CA 6, 1968).

See also *Smith v Manausa,* 535 F2d 353, 354 (CA 6, 1976); *Petition of United States Steel Corp,* 479 F2d 489, 498 (CA 6, 1973); *Miles v Dist of Columbia,* 166 US App DC 235, 243; 510 F2d 188, 196 (1975); *Fuchstadt v United States,* 442 F2d 400, 404 (CA 2, 1971); *Tyminski v United States,* 481 F2d 257, 271 (CA 3, 1973); *Mitsui O S K Lines, K K v Horton & Horton, Inc,* 480 F2d 1104, 1106 (CA 5, 1973); *United States for Use and Benefit of H & S Industries, Inc v F D Rich Co, Inc,* 525 F2d 760, 767 (CA 7, 1975); *Hysell v Iowa Public Service Co,* 534 F2d 775, 786 (CA 8, 1976); *Whiteis v Yamaha International Corp,* 531 F2d 968, 972-973 (CA 10, 1976).

See also state court cases: *Fields v Volkswagen of America, Inc,* 555

A

On a review of the record, we are left with the definite and firm conviction that the judge awarded Precopio excessive damages for pain and suffering, humiliation, and loss of power in his hand.

Precopio testified that, during the first eight-month period, when he missed work after the accident, he experienced much pain, despite prescribed heat treatments and medication, especially pain radiating from the back of his neck down his right arm. He also noticed a loss of strength in his right arm, an intermittent numbness in his right arm and right hand, and a weakened grip in his right hand. Precopio conceded that he did not experience as much pain in his right hand at the time of trial. Nevertheless, he still experienced pain through his shoulder, the back of his neck, and down his right arm, in addition to headaches and occasional numbness in his right arm. As a result, Precopio testified that he left his job as a spot sander whenever he could not use both hands, that he had discontinued carpentry around his home, that he no longer played as actively with his children, that his injury had adversely affected his sexual relationship with his wife, and that he experienced depression.

Precopio's personal physician diagnosed the injury as cervical-dorsal sprain. Eventually, because Precopio returned several times with the same complaints, the physician diagnosed fibromyositis,

P2d 48, 53 (Okla, 1976); *Rodrigues v Hawaii*, 472 P2d 509, 521 (Hawaii, 1970); *Patrick v Sedwick*, 413 P2d 169 (Alas, 1966); *Morrison v Alaska*, 516 P2d 402 (Alas, 1973).

although he could not state from objective signs that Precopio had scar formation, found Precopio's reflexes normal, and observed no narrowing of disc spaces in an initial x-ray. The physician also felt that Precopio had "healed very nicely" and that any damage to his musculature would heal in time.[16] Asked whether he thought that Precopio's pain resulted from residuals from the injury, the physician responded, "Could be". Asked whether he thought that the residuals from the injury would become permanent, he responded, "perhaps". On two occasions, the physician pronounced Precopio fit to return to work, but Precopio did not do so.

A physician who examined Precopio for the city some 3-1/2 months after the collision found that Precopio demonstrated a satisfactory range of motion in his shoulder girdle, experienced no present tenderness in his neck and shoulders during palpation, and had developed no scars in the cervical area, although an x-ray revealed a narrowing disc space. This physician conceded that persons suffering cervical spine injuries often experience exacerbations and remissions, but testified that the changes in disc space could have resulted from

[16] Although Precopio had felt pain on flexion-extension of his cervical-dorsal spine and had showed some rigidity of his spinal musculature during the initial examination after the accident, the pain upon flexion-extension had subsided considerably at the time of an examination on May 14, 1973; on June 17 or 18, 1973, Precopio's physician recorded that Precopio experienced no pain on flexion-extension. While Precopio could not move his head, neck, or dorsal spine forward or backward in the normal range of motion and thus suffered an 80% restriction of motion at the initial examination in 1972, at trial Precopio demonstrated only a slight restricton in bringing his head to his right shoulder, but could move his head to his left shoulder; he could put his head on his chest, but apparently could not rotate his head. Twice during the course of treatment, Precopio's physician pronounced Precopio fit to return to work, yet neither in early January, 1973, nor in late April, 1973, did Precopio do so.

earlier trauma.[17] On the basis of his examination, this physician also concluded that Precopio could resume work, as well as normal activities.

In short, on this record of less than forceful medical testimony, a record which prompted the judge to remark that there was a dearth of clear and convincing evidence of permanency, the judge could nevertheless properly conclude that Precopio had experienced and might continue to experience some pain and suffering from a cervical-dorsal sprain, as well as intermittent numbness in the arm and hand and a weakened grip. The proofs nonetheless do not justify a past and future pain and suffering award of $375,000.

In reappraising damage awards, this Court has followed a rule of just compensation based upon the evidence. To sustain his burden of proof, a plaintiff must establish injury and the appropriate compensation therefor with reasonable certainty.[18]

Surveying cases involving excessive non-jury awards in this and other jurisdictions, we find that appellate courts rarely explain why they believe an award excessive, how they have decided upon the amounts by which they diminish awards through *remittitur* or reduction, or by what amount an award exceeds a reasonable award when they remand. Yet, since no trier of fact can

[17] On cross-examination, Precopio conceded that, to alleviate pain resulting from injuries sustained in the 1972 collision, he had worn a cervical collar acquired when he had suffered another whiplash injury as a result of a previous rear-end collision; however, he later testified that physical problems and pain resulting from the prior accident had subsided before the 1972 accident.

[18] See *Kellom v City of Ecorse,* 329 Mich 303, 307-308; 45 NW2d 293 (1951); *Gilson v Bronkhorst,* 353 Mich 148, 153-154; 90 NW2d 701 (1958); *Clissold v St Louis-San Francisco R Co,* 600 F2d 35 (CA 6, 1979) (applying Michigan law).

value pain and suffering with mathematical certainty, a reviewing court must offer "something more tangible than a difference of opinion as to amount" before it sets aside a non-jury award as clearly erroneous. *Fishleigh v Detroit United Railway,* 205 Mich 145, 167-168; 171 NW 549, 556 (1919). In *Fishleigh,* this Court looked to comparable awards in similar personal injury cases to evaluate whether a particular award exceeds the range demonstrated by the evidence.

We appreciate that no two cases precisely resemble one another, especially where unliquidated damages are involved. No two persons sustain the same injury or experience the same suffering. An appellate court should not attempt to reconcile widely varied past awards for analogous injuries "which in the abbreviated appellate discussion of them seem somewhat similar". *Gaspard v LeMaire,* 245 La 239, 270; 158 So 2d 149, 160 (1963). However, if research uncovers a sufficient sample of reviewed awards, comparisons with analogous cases may prove of some value.

This Court has cited comparable cases "not to show any fixed rule employed", but to demonstrate a method for purging an excessive award of its improper elements.[19] Such comparison nevertheless plumbs a collective sense of the relative worth of a life diminished by the burden of restricted movement or chronic pain, the loss of organ or limb, or the humiliation of disfigurement.

Analogous cases cannot serve as the dispositive or controlling criterion for evaluating an award for pain and suffering, but rather as one factor

[19] See Peck, *Compensation for Pain: A Reappraisal in Light of New Medical Evidence,* 72 Mich L Rev 1355, 1356-1368 (1974).

which may provide some sense of a reasonable range of awards. An appellate court reviewing a personal-injury award should decide each case by its own facts, *Fishleigh, supra,* p 161.[20] When the Court looks to comparable awards, we do not attempt to set a schedule for recovery in personal injury cases, for we recognize that one person's experience of pain differs from another's,[21] and we recognize that the proofs in particular cases may reasonably justify an award beyond the high side of the range of awards reported in appellate cases.

Counsel in a non-jury case may not introduce evidence of analogous cases before the judge makes his findings of fact.[22] Not every damage award so surprises in its generosity as to justify a post-trial motion to set it aside as excessive. Litigants should not be burdened with compiling evidence in every case of the range of comparable awards. Only in the post-trial posture, where the judge reviews the propriety of his findings of fact,

[20] See, also, *e.g., Lombard v Cory,* 95 Idaho 868; 522 P2d 581 (1974); *Miller v Thomas,* 258 La 285; 246 So 2d 16 (1971); *Hamilton v Slover,* 440 SW2d 947 (Mo, 1969); *Senko v Fonda,* 53 NY App 2d 638; 384 NYS2d 849 (1976); *Complete Auto Transit, Inc v Reese,* 425 P2d 465 (Okla, 1967); *Lucht v Youngblood,* 266 SC 127; 221 SE2d 854 (1976); *Martin v Southern R Co,* 225 Tenn 77; 463 SW2d 690 (1971); *Bourassa v Gateway Erectors, Inc,* 54 Wis 2d 176; 194 NW2d 602 (1972); *Washington County Kennel Club, Inc v Edge,* 216 So 2d 512 (Fla App, 1968), citing *Pendarvis v Pfeifer,* 132 Fla 724; 182 So 307 (1938); *Bill Hendrix Auto Parts v Blackburn,* 433 SW2d 237 (Tex Civ App, 1968); *Seffert v Los Angeles Transit Lines,* 56 Cal 2d 498; 15 Cal Rptr 161; 364 P2d 337 (1961); *Townsend v Stamper,* 398 SW2d 45 (Ky, 1965); *Montgomery v Vigil,* 65 NM 107; 332 P2d 1023 (1958).

[21] See *Stone v Sinclair Refining Co,* 230 Mich 472, 474; 202 NW 1004 (1925); *Palmer v Security Trust Co,* 242 Mich 163, 166; 218 NW 677, 678-679 (1928). See also *Collins v Hull,* 256 Mich 507; 240 NW 37 (1932).

[22] For the impropriety and potential prejudicial effect of introducing amounts of verdicts in similar cases before a factfinder during trial, see, generally, Anno: *Propriety and prejudicial effect of reference by counsel in civil case to amount of verdict in similar cases,* 15 ALR3d 1144.

may counsel introduce comparable awards. With a developed record, the judge can expressly incorporate those factors which he finds persuasive among his reasons for concluding, if he so concludes, that he did not err in finding damages, whether his findings fall within, above, or below the demonstrated range of damage awards in analogous cases.[23]

Our examination of analogous awards which appellate courts have reviewed and our reappraisal of the proofs convinces us that the judge committed clear error when he awarded Precopio $375,000 on this record for pain and suffering, humiliation, and residual injury to his right arm resulting from a cervical sprain sustained in a rear-end collision.

We decline to evaluate the award by comparison to the unaccepted mediation award, as the city urges us to do. Not only would such comparison frustrate the public policy that encourages settlements, a policy which underlies the exclusion of offers to settle or to compromise from consideration by the factfinder on the issue of liability,[24] but, also, such comparison offers little of probative value to the factfinder since mediators sometimes

---

[23] Perhaps, as in *Wry v Dial,* 18 Ariz App 503, 505-511; 503 P2d 979 (1972), where the appellate court painstakingly enumerated the extent and severity of plaintiff's burns, the rigors of painful treatment, and the emotional distress and humiliation resulting from permanent brain damage, permanent disfigurement, and radical personality change, all of which forced an untimely, brutal conclusion to a brilliant and singular career in medico-engineering research and invention, a trial court may remark that the case at bar surpasses all personal injuries of a given type which he has observed in the suffering experienced and the permanent injury endured. Such a statement would enable an appellate court to sift the record with some understanding of the trial court's view of the proofs and of its assessment of damages.

[24] MRE 408.

set a figure in order to facilitate settlement rather than to assess damage.

Analogous non-jury cases reviewed by Michigan appellate courts demonstrate a range of considerably lower total awards[25] than the award for pain and suffering in this case, adjusted for the effects of inflation. The low side of the range hovers near $2,000-$3,000 in 1978 dollars;[26] the high side, near $15,000.[27]

[25] This range does not include cases in which appellate courts have reduced jury awards by *remittitur* since in such cases the standard of review may differ from the clearly erroneous standard.

[26] We adjust for the different purchasing power in the year of the judgment. See 22 Am Jur 2d, Damages, §§ 365, 368, pp 470-472, 475-477 and the cases cited therein.

[27] In 1962, this Court refused to find inadequate a $1,000 award to a man who suffered a whiplash injury in a rear-end collision and whose doctor testified to largely subjective symptoms with some objective symptoms. *Greinke v Yellow Cab Co of Muskegon,* 368 Mich 611; 118 NW2d 835 (1962). In *Routsaw v McClain,* 365 Mich 167, 169; 112 NW2d 123 (1961), this Court affirmed a lump-sum $7,500 award by a trial court for injuries sustained in a rear-end collision, to compensate for injury to wage-earning capacity, to loss of earnings, to past, present, and future pain and suffering, and to future probable medical and therapeutic treatment for a cervical syndrome injury, permanent in nature, even though characterized by exacerbations and remissions.

Jury awards in analogous cases also suggest that a far lower award seems reasonable. A $1,500 jury verdict which plaintiff unsuccessfully appealed as inadequate in *Moyer v Shampo,* 357 Mich 391; 98 NW2d 631 (1959), compensated a plaintiff who experienced severe pains in exerting the muscles in the neck and shoulder and who remained off work for six weeks after an automobile accident, returning to work for only one week before leaving work again for nine weeks and then working part-time for two weeks. In *Nowak v Twin Pines Farm Dairy, Inc,* 356 Mich 548; 97 NW2d 126 (1959), this Court affirmed a $7,000 lump-sum award including wage loss against a charge of inadequacy of a jury verdict where, after a "whiplash injury" sustained in an automobile accident, plaintiff underwent hospitalization on two occasions, experienced blackouts, underwent repeated episodes of traction, and seven months later still experienced tenderness of the neck muscles at the base of the skull and at the tips of his shoulder blades. Two years later, in *Yates v Wenk,* 363 Mich 311; 109 NW2d 828 (1961), this Court sustained a jury award of $18,000 for pain and suffering where plaintiff experienced continuous neck and head pains, where two treating physicians attested to the chronic nature of plaintiff's pain, and where plaintiff had expended $5,000 for continuous treatment for two years up to the time of trial.

A survey of other jurisdictions for analogous pain and suffering and personal injury awards reinforces our conviction that the judge awarded pain and suffering damages far in excess of the highest reasonable amount on these proofs.[28] On the one hand, the low side of the range in analogous non-jury cases hovers near what would amount to $5,000-$10,000 in 1978 dollars.[29] On the

In short, the instant award for pain and suffering for cervical strain occasioned by a rear-end collision far exceeds the highest reported amount awarded in comparable non-jury and jury cases in Michigan, even if we adjust those damage awards for inflation.

[28] See, generally, Anno: *Excessiveness or adequacy of damages awarded to injured person for injuries to head or neck,* 11 ALR3d 370, 590-657; Anno: *Excessiveness or adequacy of damages awarded to injured person for injuries to arms, legs, feet, and hands,* 11 ALR3d 9, 106-111, 186-190; Anno: *Excessiveness or adequacy of damages awarded to injured person for injuries to trunk or torso,* 12 ALR3d 117; Anno: *Excessiveness or adequacy of damages awarded for injuries to arms and hands,* 12 ALR4th 96.

[29] The following non-jury cases arose from automobile collisions which resulted in cervical sprain and chronic pain with periods of recurrence and remission, which minimally interfered with plaintiff's work, and for which plaintiff underwent brief or no hospitalization, but repeatedly sought treatment:

—*Nelson v Rahman,* 88 SD 325, 326; 219 NW2d 474 (1974), $2,500 award, of which $1,659.28 recompensed past and future pain and suffering where a 34-year-old plaintiff sustained neck pain, numbness of arm, and some restricted range of motion in neck;

—*White v State Farm Mutual Automobile Ins Co,* 326 So 2d 596, 600 (La App, 1976), $3,000 pain and suffering award where plaintiff suffered cervical sprain and expended $206.77 for medical treatment;

—*Chauvin v Clark,* 326 So 2d 609, 612 (La App, 1976), $4,500 general damage award where plaintiff experienced recurrence and remission of pain from cervical sprain, which radiated into right arm and hand;

—*Wellhouse v United States,* 383 F Supp 263, 264 (ED Mo, 1974), $5,000 award for injuries and lost wages where 51-year-old plaintiff with life expectancy of 20 years expended $400 for treatment of cervical-dorsal sprain, experienced stiffness in neck and arms and loss of normal rotation in neck, and lost eight months of work;

—*Fusaro v Naccarato,* 103 RI 324, 327; 237 A2d 545, 547 (1968), $5,000 pain and suffering award where plaintiff, hospitalized twelve days, endured severe pain in neck and back and continued to experience difficulty with right arm at trial.

Jury awards affirmed on appeal in analogous cases demonstrate a low side similar to, if slightly above, the low side of the range, in

other hand, the high side of the range in non-jury cases involving cervical sprain occasioned in a

analogous non-jury cases. The low side for similar personal injuries spans from $2,000-$8,000 in 1978 dollars:

—*Davidson v Vogler,* 507 SW2d 160, 161-162 (Ky, 1974), $1,000 pain and suffering award; plaintiff with cervical sprain hospitalized in traction for three days, lost time from work, and continued to suffer pain at time of trial;

—*Hines v Terrenoire,* 59 NY App 2d 1061; 399 NYS2d 821, 822 (1977), $2,500 award for injuries and property damage; plaintiff sustained soft tissue injury to neck and shoulders;

—*Guckian v Fowler,* 453 SW2d 323, 330-331 (Tex Civ App, 1970), $3,000 award; appellate court denied request for *additur* to plaintiff, who lost seven weeks from work and continued to experience pain from "whiplash injury" in back, neck, shoulder, and arm;

—*Fishburne v Short,* 268 SC 546, 550; 235 SE2d 118, 120 (1977), $2,840 and $3,650 awards; plaintiffs' neck pain continued for two years after rear-end collision;

—*Hays v Proctor,* 404 SW2d 756, 763 (Mo App, 1966), $2,500 award; plaintiff suffered "whiplash injury" to cervical muscles and spine, consulted physician twenty times during four years prior to trial, had no grip in hand or control over arm and hand for some time after collision, experienced severe headaches, could not bend normally or lift heavy objects, and still taking a cortisone derivative at time of trial;

—*Wegerer v Koehler,* 28 Wis 2d 241, 245-246; 137 NW2d 115, 117 (1965), $3,500 award; plaintiff sustained cervical-dorsal sprain and experienced pain and weakness in right grip up to time of trial;

—*Clark v Rucker,* 377 SW2d 65, 67 (Ky, 1964), $3,994.65 award, of which $394.65 recompensed medical and hospital expenses; plaintiff sustained cervical root or vertebrae injury, repeatedly sought medical treatment, and complained of pains in neck and left arm at trial, three years after collision;

—*Tos v Handle,* 209 Kan 139, 141-142; 495 P2d 896, 899 (1972), $6,750 award; plaintiff suffered continuing painful injuries to neck, arm, and hand, lost three months from work, changed jobs, and curtailed activities;

—*Hamrick v Thompson,* 276 Ala 605, 610-611; 165 So 2d 386, 391-392 (1964), $5,000 award; plaintiff sustained injury to cervical and dorsal spines, temporary injury to nerves of right arm, required traction, and continued in treatment over two-year period prior to trial;

—*Garska v Harris,* 172 Neb 339, 351-352; 109 NW2d 529, 536 (1961), $4,000 award; hospitalized for four days after collision, 63-year-old plaintiff suffered severe cervical sprain, underwent traction, cortisone treatments, and massage, wore rib harness, and continued to complain of pain and to seek treatment two years after accident;

—*Pepin v Beaulieu,* 102 NH 84; 151 A2d 230 (1959), $3,000 award; plaintiff experienced pain from "whiplash injury" for two years, sought treatment continuously, and gave up job because of pain.

collision plus chronic pain hovers near what would amount to \$15,000-\$25,000 in 1978 dollars.[30]

---

[30] See the following analogous cases:

—*Jasper v Garcia,* 280 So 2d 389 (La App, 1973), \$7,500 pain and suffering award where plaintiff suffered cervical sprain, lumbar-sacral sprain, and possible narrowing of disc space, wore cervical collar and back support, and continued to experience pain three years after the accident;

—*Courtright v United States,* 276 F Supp 489 (D Colo, 1967), \$8,136 award, of which \$2,500 for pain and suffering where plaintiff injured in rear-end collision continued to experience pain in neck and lower back at time of trial;

—*Sodergren v Goodman,* 242 F Supp 44 (ED SC, 1965), \$7,500 personal injury and pain award where plaintiff hospitalized for ten days, experienced extension-flexion of the cervical spine and continued to suffer pain at trial some three years after the accident.

Jury awards affirmed on appeal in analogous cases demonstrate a high side above the high side of the range in analogous non-jury cases, *i.e.,* a high side of \$40,000-\$75,000:

—*Moser v Brown,* 249 NW2d 612 (Iowa, 1977), \$30,000 award where plaintiff sustained "traumatic insult" to tissues in neck and spine and still suffered pain and residual effects from injury, including numbness in both arms, up to the time of trial;

—*Thompson v Nee,* 12 Wis 2d 326; 107 NW2d 150 (1961), \$18,000 award where 23-year-old plaintiff suffered from continuous and chronic pain due to whiplash injury and became disabled as housewife;

—*Warriner v Eblovi,* 485 SW2d 700 (Mo App, 1972), \$30,000 award where 33-year-old plaintiff who sustained cervical sprain in rear-end collision suffered constant pain in neck, head, shoulder, and arm and became bedridden one day a week, where surgery would not relieve condition, and where community activities severely curtailed;

—*Oliver v Blakeney,* 244 SC 565; 137 SE2d 772 (1964), \$25,000 award where 18-year-old plaintiff sustained whiplash injury, suffered chronic pain, experienced loss of wages for eight months, and became disabled from full-time work as a result of the injury;

—*Reindl v Opitz,* 217 NW2d 873 (SD, 1974), \$36,000 award where 19-year-old plaintiff sustained severe neck sprain, underwent ten days of hospitalization, wore a collar, left school because she suffered continuous pain, suffered chronic pain, and could neither turn her head nor raise her arms;

—*Borowicz v Seuring Transit Co, Inc,* 98 Ill App 2d 326; 240 NE2d 314 (1968), \$33,000 award where 48-year-old plaintiff injured in rear-end collision underwent six days of hospitalization, which included traction and a collar, and suffered hyperextension and hyperflexion of the cervical spine, pain in the neck, numbness in a hand, and limited motion of the neck, as well as bruises and ligamental and muscular injury to the neck;

—*Mallett v Brannon,* 246 Ark 541; 439 SW2d 32 (1969), \$38,000 award where 32-year-old plaintiff with life expectancy of 44-1/2 years

sustained soft-tissue damage and a straightening of the normal curve of the cervical spine in a collision and suffered continuous pain and 15% partial disability at trial 27 months later;

—*Gilbert v Haigler,* 363 SW2d 337 (Tex Civ App, 1962), $35,000 award where 29-year-old plaintiff sustained whiplash injury and straightening of the normal lordotic curve of the cervical spine in rear-end collision, even though plaintiff had never entered the hospital or worn a brace or traction as a result of his injuries, where plaintiff continued to experience sharp pains running down his right arm, headaches, and pains in his neck at trial, and where plaintiff's earnings had dropped from $6,500 per year prior to his injury to a total of approximately $4,500 for two years following his injury;

—*Peters v Benson,* 425 P2d 149 (Alas, 1967), $34,646 award where 65-year-old plaintiff with 20-year life expectancy sustained cervical sprain in rear-end collision and experienced numbness in fingers and tenderness along C-6 and C-7 disc space, as well as limited rotation of neck to the right, so that she became unable to work an eight-hour shift as a typist without immediately confining herself to bed;

—*Complete Auto Transit, Inc v Reese,* 425 P2d 465 (Okla, 1967), $80,000 award for injuries, past and future medical expense, property damage, and loss of earning capacity where plaintiff suffered whiplash injury and straightening of the normal curve in the neck, entered the hospital on three occasions for extended stays for traction and therapy, suffered pain at time of trial, became disabled from housework, and could continue to work at office machines, but only with constant pain.

Where jury awards exceed the high side described above, plaintiffs suffered greater disability requiring more extensive treatment as a result of rear-end collisions than did Precopio:

—In *Ball v Continental Southern Lines, Inc,* 45 Ill App 3d 827; 4 Ill Dec 334; 360 NE2d 81 (1977), the Illinois appellate court upheld a jury award of $100,000 to a plaintiff who suffered cervical sprain with pressure on the greater occipital nerve, which resulted in scar formation extending to the 7th cervical vertebra; such injuries resulted in headache, muscle spasms in the neck, depression, and pain and numbness in plaintiff's right arm and fingers which precluded her from lifting over 10 to 15 pounds, and necessitated hospitalization every few years for extensive therapy unavailable on an out-patient basis; moreover, plaintiff's medical expenses amounted to $5,000 by the time of trial, including a three-week hospitalization term, and she missed approximately four weeks of work immediately following the accident and resumed her employment for one year only to lose her job as a result, according to her testimony, of her inability to use her right arm.

—In the highest award for analogous injuries plus additional injuries sustained in a rear-end collision which we found, *Roberts v Tatum,* 575 SW2d 138 (Tex Civ App, 1978), the Texas Court of Civil Appeals upheld a jury award for $278,000, of which $7,000 compensated for physical pain and mental anguish in the past and $25,000 compensated for physical pain and mental anguish which in reasonable probability plaintiff would sustain in the future, where plaintiff, thrown forward into the steering wheel upon collision, continued to

Only where cervical sprain and chronic pain combines with other injuries resulting from an automobile collision or with other pre-existing conditions aggravated by the collision have trial courts exceeded the above-described high side of the range.[31]

We are mindful that the judge sought to compensate a plaintiff with a 33-year life expectancy for humiliation and for residual injury to his right arm, so that we may extend the high side of the range to include cases which compensate for cervical sprain plus additional lingering injuries. Even so, the award amounts to almost eight times the highest awards in analogous non-jury cases affirmed on appeal.

Where the amount awarded outruns the reasonable range demonstrated by the proofs, a reviewing court has several options. As one option, a reviewing court may remand for a new trial. In remanding, courts have sometimes expressed the fear that an appellate court usurps the province of the factfinder if it substitutes another figure for the trial court's award, yet with rare exception, as where a plaintiff has failed to enter any proofs on

experience severe pain despite treatment and the prescription of a soft collar, could no longer work, and experienced numbness in his right hand, burning sensation in his arms, and an inability to hold items in his hands and to turn his neck and head.

[31] See, for example, *Bye v American Income Life Ins Co,* 316 So 2d 164 (La App, 1975), $30,000 for pain and suffering and for loss of wages where plaintiff suffered chronic pain from cervical sprain, which injury aggravated pre-existing emotional instability and resulted in hospitalization in a psychiatric ward, and *Rosenstein v Chicago Transit Authority,* 12 Ill App 3d 1089; 299 NE2d 396 (1973), $36,000 award where bus rear-ended automobile stopped at intersection for red light, 49-year-old plaintiff-driver sustained severe strains of cervical spine and lower back, entered the hospital twice, suffered extensive pain, experienced difficulty in walking, and would require a laminectomy to alleviate spur formation.

damages or where the proofs offered do not support any finding of damages, an appellate court consciously or unconsciously refers to a range of awards reasonable on the facts and circumstances presented when it perceives an award to be excessive.

This Court can more readily avoid acting as a superfactfinder if it does more than declare that there was error and, with little or no guidance, remand to the trial court, for on remand the trial court lacking guidance may again award damages that exceed the range sensed by the appellate court. Since, at the very least, an appellate court which remands feels that the award exceeds the highest amount reasonably demonstrated by the proofs, to remand without direction burdens litigants unnecessarily and forces a plaintiff who has fortuitously tried his case before a generous factfinder, as our system permits, to re-try the issue of damages before another factfinder, perhaps less generous or perhaps more generous than the first.

As other options, to avert the expense and protraction of further litigation in a case where the appellate court approves the finding on liability, the reviewing court may reduce damages, or it may condition affirmance of the judgment upon plaintiff's acceding to a *remittitur.*[32] Whether a reviewing court orders remand, reduction, or *remittitur,* the court either determines the amount by which the finding of damages exceeds the reasonable range of awards supported by the proofs or, at the very least, determines the highest award

---

[32] In *Grinnell v Carbide & Carbon Chemicals Corp,* 282 Mich 509; 276 NW 535 (1937), this Court reappraised the record in a non-jury case involving personal injuries sustained in an explosion aboard a yacht and affirmed the judgment on condition that the three plaintiffs file individual *remittiturs* of $27,500, $16,000, and $3,500.

reasonable on the proofs in order to adjudge as excessive the amount awarded by the trial court.

We are persuaded that the highest award within a reasonable range based upon our review of the proofs and reinforced by our survey of analogous cases in this and other jurisdictions which can be justified for past and future pain and suffering and for "humiliation [and] loss of power in [Precopio's] hand" is $75,000.

### B

While the judge apparently failed to award Precopio damages to reimburse the costs of past medication at some ten dollars per week in the 4-1/2 years from the date of the accident to the time of trial, he did award $8,500 for "future medications". As the dissenting judge in the Court of Appeals remarked, if Precopio continued to purchase medications in the future at the same rate that he had prior to trial, this amount would sustain him for the next 85 years although the record shows a life expectancy of 33 years. Even if the judge intended the award for "future *medications*" to encompass the cost of future medical *treatments,* the amount of the award still exceeds Precopio's life expectancy. We reduce the "future medications" award to $6,500.

### C

The city also complains that, since the injury and residuals which Precopio sustained in the 1972 collision did not impair his earning capacity, the judge awarded excessive damages of $31,400 for past wage loss and $20,000 for future wage loss.

We cannot say that the judge clearly erred in his computations of past and future wage loss. The judge found that the evidence supported the $31,-400 computation for past wage loss on the basis of testimony by a personnel representative from Precopio's employer regarding Precopio's hourly rates and on the basis of Precopio's testimony regarding the number of hours that he worked each week, including overtime hours. Rather than using any of the measures suggested by Precopio's counsel in closing argument for future wage loss, the judge apparently concluded that $20,000 would compensate Precopio for the approximately ten work days a year that he would continue to miss due to pain from his injury.

### D

In conclusion the judge clearly erred when he awarded damages which outpaced the proofs. We reduce Precopio's award to $132,900 and remand for entry of such a judgment.

FITZGERALD, C.J., and KAVANAGH, WILLIAMS, COLEMAN, and RYAN, JJ., concurred with LEVIN, J.

RILEY, J., took no part in the decision of this case.